IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA R. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-120-GLJ |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

# OPINION AND ORDER

Claimant Joshua R. Taylor requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was thirty-two years old at the time of the administrative hearing.  (Tr. 47).  He completed eleventh grade and has worked as a stock clerk, material handler, construction worker I, maintenance, and housekeeping cleaner.  (Tr. 78, 403).  Claimant alleges that he has been unable to work since his application date of October 1, 2019, due to lungs, lower back, diabetes, high blood pressure, and depression.  (Tr. 402).

## Procedural History

On August 18, 2020, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His applications were denied.  ALJ Deborah M. Giesen conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated April 19, 2022.  (Tr. 21-33).  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation.  At step two, she found Claimant had the severe impairments of obesity, obstructive sleep apnea, and degenerative disc disease of the lumbar spine, as well as the nonsevere

impairments of hypertension, diabetes mellitus, right knee infarction, right thigh pain/numbness, respiratory failure, complications from COVID-19 infection, depression, and anxiety. She then determined Claimant did not meet at Listing at step three. At step four, she found that Claimant had the residual functional capacity ("RFC") to perform the lifting requirements of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could only occasionally climb, stoop, kneel, crouch, and crawl, and he should have no concentrated exposure to dusts, fumes, gases, poor ventilation, or extremes of cold. (Tr. 28). The ALJ then concluded that Claimant could return to his past relevant work as a housekeeping cleaner. (Tr. 31). Alternatively, she found at step five that other jobs existed that he could perform in the national economy, *e.g.*, cafeteria attendant, marker, and folding machine operator. (Tr. 32-33).

### Review

Claimant appears to assert a sole argument of error here, contending that the ALJ erred by improperly evaluating the medical opinions in the record, particularly the opinions from the state agency reviewing physicians as to both physical and mental assessments. In support, he asserts these reviewing physicians failed to account for his pulmonary function tests and oxygen saturation percentages, as well as shortness of breath, need to rest, and pain limitations and further failed to account for his degenerative disc disease, including gait, MRI findings, and range of motion limitations prescribed by a consultative examiner. Although the arguments do not follow a linear path, Plaintiff further appears to raise related arguments as to the RFC assessment as a whole and with regard to the ALJ's evaluation of the consistency of his statements, asserting that the ALJ's findings contradict diagnoses

and observations including gait, speed, and range of motion findings and notations, as well as substituting her own opinion for medical professionals when it came to his nonsevere mental impairments. The Court agrees with Claimant's contention as it relates to ALJ's assessment of the state reviewing physicians with regard to his physical impairments, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to the claimant's physical impairments reflect Claimant's weight ranged from 372 to 393 pounds during the relevant time period. (Tr. 848, 938, 1065, 1077, 1317, 1510, 1767, 1955). On October 7, 2019, shortly after his October 1 alleged onset date, Claimant presented to the Muscogee Creek Nation for treatment of low back pain going down both legs and up the spine. (Tr. 845). Claimant was assessed with radiculopathy of the lumbar spine, segmental and somatic dysfunction of the lumbar region, and sciatica. (Tr. 849). Films taken that day revealed hypolordosis in the lumbar spine, left spinous rotational malposition and slight right towering to the lumbar spine, as well as slight retrolisthesis of L5 on S1, a right functionally short leg 2 cm from a posteriorly rotated right pelvis, and decreased range of motion that exacerbated his myofascial pain. (Tr. 849).

In 2020, Claimant contracted COVID-19 and was hospitalized from July 9 through July 28, spending a portion of it in the ICU due to worsening respiratory distress. (Tr. 441, 458). During that time, he was placed on ECMO for ten days due to acute hypoxic hypercapnic respiratory failure, then given nasal cannula oxygen. (Tr. 441, 446). Although the initial plan upon Claimant's discharge was long-term acute care, he instead requested to be discharged to home so that he could attend his father's funeral (who had passed away

while he was in the ICU). (Tr. 468). His diagnoses on discharge included, *inter alia*, acute hypoxic hypercapnic respiratory failure secondary to complications from COVID, uncontrolled diabetes, morbid obesity with BMI of 60.29, obesity hypoventilation syndrome/obstructive sleep apnea. (Tr. 469). Additionally, his acute on chronic respiratory failure meant he was oxygen dependent, and he was discharged home with oxygen via nasal cannula. (Tr. 469). Upon his discharge to home, he still needed, in addition to oxygen at all times, a shower chair due to his dyspnea, as well as physical therapy for strength and endurance. (Tr. 911).

By September 4, 2020, Claimant had completed eight out of fifteen physical therapy visits, but put it on hold after a knee injury and never returned. (Tr. 966). The notes reflect Claimant met the goal of being independent for his home exercise plan, but other goals were discontinued (rather than considered "met"), including walking 200 meters in a two-minute test while maintaining oxygen above 89% O2 sat. (Tr. 966, 983-984, 990, 1019). On August 31, 2020, Claimant had reported to PT that he had gone the whole weekend without oxygen, but his O2 sat percentage that day ranged from 86-90% throughout endurance training, *while wearing* his oxygen. (Tr. 1019).

In September 2020, Claimant reported his continued low back pain with sciatica, as well as right thigh numbness, and he was still oxygen-dependent. (Tr. 919). An October 13, 2020 MRI of the lumbar spine revealed moderate-size right eccentric disc protrusion at L5-S1 causing moderate/severe right neural foramen and lateral recess stenosis. (Tr. 952). An MRI of the right knee revealed a likely large bone infarct in the tibial metaphysis/diaphysis with developing infarct in the distal femur not excluded. (Tr. 1178).

He continued to report chronic low back pain and was variously treated with steroids and pain medications, and instructed to follow up. (Tr. 1203, 1317-1318, 1386-1387, 1929, 1963, 1979). Claimant was involved in a motor vehicle accident on April 27, 2021, and was treated for right arm pain and low back stiffness and pain. (Tr. 1441). At the time of his treatment, he was on room air and had 94% O2. (Tr. 1443). On May 23, 2021, Claimant presented for head congestion and a cough, reporting he required intermittent oxygen. (Tr. 1510). At the time of the exam, his O2 was 97%. (Tr. 1510). An x-ray revealed a possible enlarged main pulmonary artery which could be seen with pulmonary hypertension, and he was instructed to follow up with his primary care provider. (Tr. 1511). He again presented with bronchitis on October 1, 2021, with shortness of breath along with a cough. (Tr. 1579). His blood pressure at the time was 166/103, but he was 96% O2 on room air. (Tr. 1581, 1584). Claimant was again on room air with 95% O2 on November 9, 2021, when he reported acute exacerbation of his back pain, but he was using a nasal cannula on November 16, 2021, when he presented with body aches and fever. (Tr. 1742).

On March 24, 2021, Claimant presented to Dr. Harold DeLaughter, D.O., for a history and physical examination. (Tr. 1065-1070). Dr. DeLaughter noted that Claimant's lungs were clear and that he had 5/5 grip strength bilaterally. However, he found Claimant had decreased range of motion of the back, knees, and shoulders, as well as generally normal heel/toe walking except that it was limited due to his size. (Tr. 1066-1070). Claimant ambulated with a stable antalgic gait due to his back pain, at a decreased speed but without the use of an assistive device. (Tr. 1066). However, Dr. DeLaughter noted that Claimant became dyspneic after 10-15 steps, then recovered after a few minutes. (Tr.

1066). He assessed Claimant with, *inter alia*, chronic respiratory failure due to COVID-19 infection, morbid obesity, diabetes mellitus type 2 insulin dependent, depression, and anxiety. (Tr. 1066). In April 2021, Claimant was sent for a pulmonary function study. Claimant had predicted Forced Vital Capacity of 4.80, but his best was 3.40. The predicted FEV1 was 4.00, but his best was 2.95. (Tr. 1074-1077). This resulted in 69% of FVC value and 71% of predicted FEV1 value, indicating some level of impairment.[3] (Tr. 1072-1077).

As to his mental impairments, Claimant was diagnosed with depression in December 2019, after he presented reporting thoughts of hurting himself. After talking with a police officer and the physician, they were comfortable allowing him to go home where people would be with him, and believed that he was not at risk for self harm or harm to others. (Tr. 883). On April 26, 2021, Claimant's depression had improved but his anxiety was about the same, although they were considered chronic conditions. (Tr. 1971, 1975).

State reviewing physicians determined initially and on reconsideration that Claimant could perform the full range of light work, with no additional postural, manipulative, environmental, or other limitations. (Tr. 107-109, 145-147). Both reviews occurred after Dr. DeLaughter completed his exam; however, only the reconsideration opinion notes that Dr. DeLaughter's exam occurred, but even it fails to acknowledge Claimant's specific deficits as to, *inter alia*, range of motion, instead focusing on noting he

---

[3] There is no interpretation (professional or otherwise) of these results in the record.

had been cooperative and his speech was clear. (Tr. 144). As to his asserted mental impairments, the state reviewing physicians determined initially and on reconsideration that evidence supported the presence of an affective disorder, but that he had no more than mild limitations and therefore any mental impairments was nonsevere. (Tr. 104-105, 143-144).

At the administrative hearing, Claimant testified that he has pain in his lower back if he sits too long, and that fluctuations in his blood pressure and blood sugar caused an inability to focus at time. (Tr. 64-66, 73). He discussed with the ALJ that he had been referred to a neurosurgeon more than once but that he had never gotten an appointment, at least partially due to COVID. (Tr. 67). Additionally, he testified that his anxiety worsens when he is around even a group of ten people. (Tr. 68). He testified that he still uses oxygen occasionally, approximately every other day, to helps with breathing and the effects of weather changes. (Tr. 71).

In her written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. As relevant here, she noted that treatment for Claimant's back and leg pain had been conservative, and that he had repeatedly been referred to a neurosurgeon but he never had an appointment to see one. (Tr. 29). She expressed consternation that he sought treatment for back pain at the emergency room rather than with a specialist, and noted that his neurological functioning was consistently normal. (Tr. 30). She pointed out a record from November 2021 where claimant went in for treatment of back pain but had normal range of motion and strength. (Tr. 30). She did not acknowledge that the same record continued, noting tenderness to palpation in the right

paraspinal musculature of the L2-S1 area. (Tr. 1649). She stated that sensation was normal "other than right lateral thigh," but did not discuss further that he still had numbness in the right thigh. (Tr. 30, 1649). The ALJ then concluded, without connecting this conclusion to the evidence, that Claimant could perform light work with the aforementioned posturual limitations. (Tr. 30). She stated, "[o]verall, exams throughout the record showed good range of motion, sometimes full range of motion, no weakness or muscle loss in the lower extremities, and normal ambulation (except when at the consultative exam)." (Tr. 30). The ALJ then noted that Claimant had difficulty heel/toe walking due to his obesity, but found he worked previously despite his obesity, without discussing his additional impairments and how they might further affect his ability to perform light work. (Tr. 30). Without discussing the record, she found that unspecified findings related to his spine were not supportive of the degree of limitation he alleged, and that his reported pain levels were inconsistent with his ability to interact normally during exams. (Tr. 30-31). Other than the above parenthetical, the ALJ made no reference to or assessment of Dr. DeLaughter's exam findings at step four. She found that the state reviewing physician opinions were persuasive but included additional pulmonary limitations "as a precaution." (Tr. 31). The ALJ did not explain the need for the additional postural limitations or how the additional ones in the RFC fully accounted for his impairments, nor how the environmental limitations as to irritants accounted for this Claimant's impairments of pulmonary function. Particularly, the ALJ found that Claimant had "normal respiratory exams for the most part," but did not

acknowledge the consultative pulmonary function exam in the record[4] indicating a potential restrictive airway disease or something related. She then found that the state reviewing physician opinions as to Claimant's mental impairments was likewise persuasive as he had not undergone treatment with a psychiatrist, and there were no significant related deficits in the record. The ALJ ultimately concluded that the claimant was not disabled. (Tr. 31-33).

The claimant argues that the ALJ failed to properly assess the medical opinions in the record including both state reviewing physicians. The Court agrees, and further notes that the state reviewing physicians did not consider Dr. DeLaughter's exam or the pulmonary function tests as part of their RFC evaluation, and the ALJ's opinion likewise fails to address them. The state reviewing physicians found Claimant had the severe impairments of chronic respiratory disorders and obesity (Tr. 104, 142), then assigned the full range of light work. In contrast, the ALJ found at step two that Claimant had the severe impairments of obesity, obstructive sleep apnea, and degenerative disc disease, but that, *inter alia*, his respiratory failure was nonsevere. (Tr. 24-25).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the

---

[4] The ALJ "acknowledged" at step two that the pulmonary function test "showed some respiratory deficits" (Tr. 25), but the ALJ wholly failed to return to these findings at step four in assessing Claimant's RFC in light of these deficits.

persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ stated

that all four state reviewing physician opinions were persuasive, and that the opinions as to his physical impairments were "supported by the record showing conservative treatment." (Tr. 31). However, she acknowledged that their opinions did not include pulmonary limitations, so she included environmental limitations as a precaution without connecting that to any evidence in the record. More importantly here, the ALJ wholly failed to assess these opinions for supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[T]he ALJ must explain how both factors were considered."); *see also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

The error with regard to evaluation of the state reviewing physician is indicative of larger errors. The ALJ made no clear explanation for the differences between her RFC assessment and the RFC suggested by the physicians, particularly after she found them both persuasive. While the RFC assessed in this case is more restrictive than that of the state reviewing physicians, the ALJ fails to connect it to the evidence in the record and, as discussed above, fails to acknowledge multiple records indicative of additional/differing limitations. The ALJ did not explain how the prescribed additional postural limitations of occasional climbing, stooping, kneeling, crouching, and crawling, accounted for his

degenerative disc disease (affecting range of motion) and obesity (affecting gait), nor how the assessed environmental limitations related to respiratory deficits. Although the ALJ *did* include postural and environmental limitations related to the claimant's physical impairments in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such limitations account for *each* of the claimant's severe impairments, *i.e.*, obesity, obstructive sleep apnea, and degenerative disc disease of the lumbar spine, must less his additional nonsevere impairments and all of the impairments in combination. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). It thus remains unclear how the claimant could perform the standing/walking requirements of light work given the evidence in the record suggestive of dyspnea while ambulating. The ALJ has pointed to no evidence in the record indicating Claimant has this capability (indeed, the examining providers who directly assessed his ambulation, Dr. Thomas and the physical therapists, noted otherwise), and "it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *2; *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings

may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted]; *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the Claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinably impairments, both those he deemed 'severe' and those 'not severe.'") (emphasis in original) (internal citations omitted). The ALJ's opinion reflects a failure to assess the combined effect of all Claimant's impairments, both severe and nonsevere, for her RFC despite the fact that "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).

Moreover, by failing to adopt completely the state reviewing medical opinions and largely ignoring the consultative examination objective findings, the ALJ was left without a medical opinion to rely on in forming her RFC determination. "Although a medical opinion is not required for the RFC determination, '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.'" *J.Z. v. Kijakazi*, 2022 WL 859765, at *6 (D. Kan. Mar. 23, 2022) (quoting *Pedraza v. Berryhill*, 2018 WL 6436093, at *4 (D. Kan. Dec. 7, 2018)); *Wells*, 727 F.3d at 1071-1072.

As to Claimant's mental impairments, there is not a medical opinion in the record that contradicts the ALJ's mental RFC determination. As such, it was not error for the ALJ to form an RFC based on the medical evidence of record without a medical source opinion. *Troutman v. Kijakazi*, CIV-21-920-SM, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022). (finding the ALJ did not "play doctor" when the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]" As to any assertion that the ALJ failed to develop the record, there is no indication that counsel requested further medical examinations, and the need was not clearly established in the record. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) ("[I]f the Claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'"). Nonetheless, on remand, the Court encourages the ALJ to consider ordering a consultative examination to properly account for both Claimant's physical *and* mental impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

On remand, the ALJ should likewise carefully evaluate Claimant's pain, and the consistency of his statements with the evidence (including any additional evidence provided by a consultative examiner). As part of the symptom analysis, required under Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017), the ALJ should consider

the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8.

Accordingly, the decision of the ALJ is hereby reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments, as well as a thorough evaluation of Claimant's pain in relation to these impairments. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 6th day of March, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**